UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:08CR458ERW(MLM) |
| ) | |
| RALPH H. SCHWARTZ, ) | |
| ) | |
| Defendant. ) | |

# REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on defendant Ralph H. Schwartz' Motion to Suppress Evidence [Doc. 28] and Motion to Suppress Statements [Doc. 29]. The government filed Responses. [Doc. 30, 31][1] An Evidentiary Hearing was held on September 9, 2008. Defendant was present in person and represented by counsel, Mr. Murray Stone, and the government was represent by Assistant United States Attorney James C. Delworth. At the hearing the government presented the testimony of John Newsham, a Detective with the Bureau of Drug Enforcement of the St. Louis County Police Department and Kevin Helldoerfer, an Officer with the St. Louis County Police Department. Defendant testified on his own behalf. Based on the testimony and evidence adduced and having had an opportunity to observe the demeanor and evaluate the credibility of the witnesses, the undersigned makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Detective Newsham testified he has been with the County Police Department for twenty-seven and a half years and assigned to the Drug Precursor Task Force for three and

---

[1] The Responses appear to be identical and refer to the motions collectively as "Motion to Suppress Evidence and Statements."

a half years.  He described his training, especially in regard to methamphetamine and methamphetamine manufacturing, and in regard to methamphetamine ingredients, including pseudoephedrine, the habits and customs of drug traffickers, and the investigation of methamphetamine manufacturing and the use of pseudoephedrine.

1.      March 9, 2006

On 3/9/06 Det. Newsham received information from another officer who had noticed a chemical smell consistent with methamphetamine manufacturing coming from defendant's residence at 4711 Tonja.  He responded to the location and knocked on the door.  Defendant eventually opened the door and Det. Newsham told defendant he was there to investigate possible drug activity.  Defendant admitted Det. Newsham to the house.  Defendant gave consent to search the house: he said "Come in and look around."  The officers located trace methamphetamine and trash consistent with typical methamphetamine laboratories.  Defendant said the items were his and indicated his supplier was "Jim."  Defendant was not arrested, nor removed from the residence.  He was advised of his <u>Miranda</u> rights but he was not in custody or restrained in any way.  The officers did not display their weapons, no force was used and no promises were made to induce defendant to permit the search or to make statements.  The officers were at the residence for approximately one hour.  The drug-related items were seized.

2.      March 14, 2006

Five days later the officers returned to defendant's residence.  Defendant had previously stated he could contact "Jim."  Defendant said James Wolf ("Jim") would be delivering pills and that Wolf was the methamphetamine cook.  Defendant called Wolf and told him to deliver the pills and Wolf did so.  Defendant was cooperative and no guns were

displayed nor were promises or threats used to induce him to make the call. Again, defendant was not arrested.

**3.     April 10, 2008**

Officers of the County Bureau of Drug Enforcement agreed to help the Kirkwood Police Department with a controlled delivery of pseudoephedrine pills to defendant Schwartz. Sgt. Murley received information from Det. Doug Hargate that co-defendant Donald Webb was supposed to deliver 500 pseudoephedrine pills to defendant as payment for a vehicle. Co-defendant Webb agreed to cooperate and made several calls to defendant Schwartz but defendant Schwartz did not answer. Delivery was postponed.

**4.     April 17, 2008**

On 4/17/08 co-defendant Webb, still cooperating with law enforcement, placed a call to defendant Schwartz. The call was tape recorded with the consent of co-defendant Webb. Defendant agreed to go to Webb's home to pick up pseudoephedrine pills. Det. Newsham went to defendant's residence on Tonja and Sgt. Murley and Det. Hargate went to Webb's home. Webb had 500 pseudoephedrine pills in a black bag. Det. Newsham observed defendant leave his residence on Tonja and drive in a Chevy Lumina to Webb's residence. Sgt. Murley saw defendant enter Webb's house and approximately fifteen minutes later leave carrying the black bag containing the pseudoephedrine pills and place them in the trunk of his car and drive away. Webb confirmed that defendant had taken the pseudoephedrine pills.

A traffic stop was coordinated with a County police officer in a marked vehicle. PO Kevin Helldoerfer was told by Sgt. Hoots to make the stop for the Drug Unit (because the

Drug Unit officers were in unmarked vehicles).[2] PO Helldoerfer stopped the vehicle and Sgt. Hoots pulled in behind defendant Schwartz. Sgt. Hoots approached the driver and PO Helldoerfer remained at the rear of defendant's car. Sgt. Hoots asked defendant for consent to search the car and defendant agreed. Defendant opened the trunk. Defendant appeared to be of average intelligence and not under the influence of drugs or alcohol. Defendant was not handcuffed or restrained. No guns were drawn. Sgt. Hoots located and seized the black bag of pseudoephedrine pills in the trunk. Defendant was then placed under arrest and conveyed to the precinct station.

At the station defendant was interviewed by Det. Newsham. He presented defendant with a County Warning and Waiver form. Gov.Ex.2. Defendant initialed each of his rights, indicated he understood, agreed to waive his rights and signed the form. Defendant then made a tape recorded statement. Gov.Ex.1. Defendant said he wanted to cooperate and admitted that he had initialed the form and waived his rights. He admitted he was stopped and had the pills in his car. He said he got the pills from co-defendant Donald Webb. He described the "deal," that is, the pills were payment for a car. Defendant said he was taking the pills to the guy who had the car. At no time did defendant ask for a lawyer or say he wanted to stop talking. No promises or threats were made to induce him to speak. During his statement defendant referred to a residence at 6149 Pointview where several tanks of anhydrous ammonia were stored. He said one of the tanks might be leaking. He indicated that he and others cooked methamphetamine at the residence and said the residence was his and that he had inherited it from his father.

---

[2] It is policy for vehicles to be stopped by officers in uniform in marked police cars. Sgt. Hoots also informed PO Helldoerfer that defendant had committed the traffic violation of failure to signal before turning.

Defendant was presented with a standard County Consent to Search form. Gov.Ex.3. Defendant signed the form consenting to the search of 6149 Pointview. Defendant is approximately 46-47 years old, is of average intelligence, had no difficulty understanding, and did not appear intoxicated or under the influence of drugs or alcohol. No promises or threats were made to defendant to induce him to consent. The residence was searched and several tanks of anhydrous ammonia and five bags of methamphetamine-related trash were seized.

After the government rested its case, defendant testified on his own behalf. Defendant testified that after he drove away from co-defendant Webb's house on 4/17/08, he did not commit a traffic violation. He testified he signaled before he turned. He said the officer did not ask permission to search the trunk and he did not give permission for the search of the trunk.

On cross examination he was asked if he picked up the pseudoephedrine pills at Webb's house. He said he picked up a bag but never looked inside the bag and did not know the pseudoephedrine pills were inside. He admitted he made a statement after being advised of his <u>Miranda</u> rights on 4/17/08. The government then played a short portion of the recorded statement made by defendant on 4/17/08 during which he admitted the pseudoephedrine pills were payment for a car. Counsel for defendant requested a recess and after the recess, he "withdrew" defendant's testimony.

The court finds defendant's testimony devoid of credibility.

## CONCLUSIONS OF LAW

**1.     Statements on 3/9/06 and 3/14/06**

On 3/9/06, officers went to defendant Schwartz residence to inquire about possible drug activity. Defendant was not under arrest. He consented to a search of his residence and gave the name of his supplier.

Miranda warnings are only required when defendant is both in custody and interrogated. Miranda v. Arizona, 384 U.S. 436 (1996). Custody for purposes of Miranda warnings occurs either upon formal arrest or any other circumstances in which the suspect is deprived of his freedom of action in any significant way. Miranda v. Arizona, 384 U.S. 436, 444 (1966); Berkemer v. McCarty, 468 U.S. 420, 429 (1984). The extent of the physical or psychological restraints placed on defendant must be examined in light of whether a "reasonable person in the suspect's position would have understood the situation" to be one of custody. Berkemer, 468 U.S. at 442. The determination of custody arises from an examination of the totality of the circumstances. United States v. Carter, 884 F.2d 368, 370 (8th Cir. 1989), citing United States v. Lanier, 838 F.2d 281, 285 (8th Cir. 1988) (per curiam).

Relevant factors to be considered in making a determination of "custody" include the suspect's freedom to leave the scene, and the purpose, place and length of the interview. United States v. Griffin, 922 F.2d 1343, 1348 (8th Cir. 1990); United States v. Lanier, 838 F.2d 281, 284 (8th Cir. 1988). "While the accused's freedom of action during an interrogation remains a critical factor, the purpose, place and length factors have been interpreted to have inconclusive, independent relevance to the determination of custody."

Griffin, 922 F.2d at 1348. Where questioning takes place in familiar surrounds, such as the subject's residence, custody is less likely to be found. Beckwith v. United States, 425 U.S. 341 (1976); United States v. Axsom, 289 F.3d 496 (8th Cir. 2002).

The undersigned finds that a reasonable person under the circumstances stated above would not believe that he was under arrest or that he was not free to leave. The facts show that the interview was not a custodial interrogation and that the statement made by defendant was voluntary. Because the statement was non-custodial, the Miranda warnings need not have been given. Berkemer v. McCarty, 468 U.S. 420 (1984); Beckwith v. United States, 425 U.S. 341 (1976). That the defendant may have been a suspect in a crime does not trigger any right on his part to be given the Miranda warnings. California v. Beheler, 463 U.S. 1121 (1983).[3]

In addition, there is no evidence that defendant's statement and consent were anything other than voluntary. No guns were displayed and no promises or threats were made. The encounter was cordial and defendant agreed to continue cooperating. Neither the statements nor the consent to search should be suppressed.

2. Tape Recorded Calls on 4/11/08

Co-defendant Donald Webb made calls to defendant which were tape recorded. Det. Newsham testified that Webb consented to the recording. It is well-established that a law enforcement agent or an informant may record conversations between himself/herself and another party without violating the Fourth Amendment or any other law. See United States v. Sileven, 985 F.2d 962 (8th Cir. 1993); United States v. White, 401 U.S. 745, 752 (1971). 18 U.S.C. § 2511(2)(c) Thus the recorded statements were lawfully obtained and are

---

[3] Although clearly not required, defendant was advised of his Miranda rights.

admissible in evidence if otherwise qualified. Therefore, the defendant's motion to suppress defendant's statements during the calls should be denied. Lopez v. United States, 373 U.S. 427 (1963); United States v. Jones, 801 F.2d 304, 315 (8th Cir. 1986); United States v. McMillan, 508 F.2d 101 (8th Cir. 1974), cert. denied, 421 U.S. 916 (1975).

**3.  Stop and Search on 4/17/08**

At the Evidentiary Hearing counsel for defendant conducted extensive examination about the traffic violation reported by Sgt. Hoots to Officer Helldoerfer. It is well established that when a police officer observes a traffic violation - - however minor - - he has probable cause to stop the vehicle. Whren v. United States, 517 U.S. 806(1996); United States v. Gomez Serena, 368 F.3d 1037, 1040 (8th Cir. 2004) (Police officer can stop vehicle with expired tags); United States v. Foley, 206 F.3d, 802, 805 (8th Cir. 2000); United States v. Bell, 86 F.3d 820 (8th Cir.), cert. denied, 519 U.S. 955 (1996); United States v. Garcia, 23 F.3d 1331, 1334 (8th Cir. 1994); United States v. Ramos, 20 F.3d 348, 351 (8th Cir. 1994); United States v. Miller, 20 F.3d 926 (8th Cir. 1994); United States v. Barahona, 990 F.2d 412 (8th Cir. 1993); United States v. Cummins, 920 F.2d 498, 500 (8th Cir. 1990), cert. denied, 502 U.S. 962, 112 S.Ct. 428 (1991); see Pennsylvania v. Mimms, 434 U.S. 106 (1977); United States v. Pillow, 842 F.2d 1001 (8th Cir. 1988). The court finds the issue of whether or not there was a traffic violation is unnecessary to the analysis of the stop: the officers had probable cause to stop defendant's vehicle because information confirmed by surveillance showed that defendant possessed pseudoephedrine pills in his trunk.

Police may search an automobile or other vehicle without a warrant if they have probable cause to believe that the vehicle contains contraband or evidence. Carroll v. United States, 267 U.S. 132 (1925); Chambers v. Maroney, 399 U.S. 42 (1970); United States v. Bloomfield, 40 F.3d 910, 919 (8th Cir. 1994), cert. denied, 514 U.S. 1113, (1995); see also

United States v. Martel-Martines, 988 F.2d 855, 858-59 (8th Cir. 1993). In such circumstances, the officers may search the entire vehicle, including the trunk area, and any items or containers found in the vehicle. California v. Acevedo, 500 U.S. 565 (1991); United States v. Ross, 456 U.S. 798 (1982).

The scope of a warrantless search of a vehicle is not defined by the nature of the container in which the contraband is hidden; rather, it is defined by the object of the search and the places in which there is probable cause to believe it may be found. United States v. Ross, 456 U.S. 798, 824 (1982). If there is probable cause to believe a container in the trunk of a car contains contraband, the container may be searched without a warrant. California v. Acevedo, 500 U.S. 565 (1991). In addition, defendant consented to a search of his vehicle.

The search of the vehicle did not exceed the scope of the consent. First, "consent to search a car means to search the entire car and whatever is in it, unless such consent is otherwise restricted." United States v. Deases, 918 F.2d 118, 122 (10th Cir. 1990), cert. denied, 501 U.S. 1233 (1991). When a defendant has ample opportunity to limit the scope of a search or request that it be discontinued, the scope of the search is limited only by the bounds of reasonableness: What a police officer could reasonably interpret the consent to encompass. United States v. Alvarez, 235 F.3d 1086, 1089 (8th Cir. 2000); cert. denied, 532 U.S. 1083 (2001); United States v. Harris, 928 F.2d 1113, 1117 (11th Cir. 1991).

The stop of defendant's vehicle and the seizure of the pseudoephedrine pills should not be suppressed.

4. **Statement on 4/17/08**

After the seizure of the pseudoephedrine pills defendant was arrested and taken to the precinct station. At the station he was given a Warning and Waiver form which he

indicated he understood, waived his rights and signed the form. A defendant may knowingly and intelligently waive his rights and agree to answer questions. Miranda v. Arizona, 384 U.S. 436, 479 (1966). When the prosecution seeks to introduce in evidence a statement made by a defendant while in custody, it has the burden of showing by a preponderance of the evidence that the statement was made after a voluntary, knowing and intelligent waiver of the Miranda rights by the defendant. Colorado v. Connelly, 479 U.S. 157 (1986). "The requirement that Miranda warnings be given does not, of course, dispense with the voluntariness inquiry" Dickerson v. United States, 530 U.S. 428, 444 (2000). The court must look to the totality of the circumstances surrounding the interrogation to determine whether the waiver was the product of a free and deliberate choice, rather than intimidation, coercion, or deception; and whether the waiver was made with an awareness of the right being abandoned and the consequences of the decision to abandon it. Moran v. Burbine, 475 U.S. 412 (1986).

The statement must be voluntary and not the product of any police conduct by which the defendant's will is overborne. Haynes v. Washington, 373 U.S. 503 (1963); Colorado v. Connelly, 479 U.S. at 170. However, as the Supreme Court stated in Berkemer v. McCarthy, 468 U.S. 420 (1984), "[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that law enforcement authorities adhered to the dictates of Miranda are rare." Id. at 433 n. 20; Dickerson, 530 U.S. at 444. This is clearly not one of the "rare" cases described in Berkemer. Defendant's statements should not be suppressed.

5. **Search of Residence on 4/17/08**

Defendant told Det. Newsham about another residence owned by him in which he cooked methamphetamine and which might contain a leaking anhydrous ammonia tank. Defendant signed a Consent to Search form.

Persons may give up their Fourth Amendment rights by consenting to a search. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). Such consent must be given freely and voluntarily. Id. In determining whether a consent to search was given freely and voluntarily, the court must examine the totality of the circumstances under which it is given. United States v. Mendenhall, 446 U.S. 544, 557 (1980); United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990); United States v. Lee, 886 F.2d 998, 1000 (8th Cir. 1989), cert. denied, 493 U.S. 1032 (1990). Consent to search may be given by the criminal suspect or by some other person who has common authority over the premises or item to be searched. United States v. Matlock, 415 U.S. 164, 171 (1974); United States v. Bradley, 869 F.2d 417, 419 (8th Cir. 1989). A search may be valid when based on the consent of a party whom the police reasonably believe to have authority to consent to the search even if it is later determined that the party did not in fact have such authority. Illinois v. Rodriguez, 497 U.S. 177, 185-186 (1990).

The inquiry must then turn to whether the consent was voluntary. The burden is on the government to show that the consent was voluntary under the totality of the circumstances. See Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973). There are numerous factors a court should consider in determining whether consent was freely and voluntarily given. United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990). In Chaidez, the Eighth Circuit noted that:

> courts should ask whether the person who consented: (1) was detained and questioned for a long or short time, . . . (2) was threatened, physically intimidated, or punished by the police, . . . (3) relied on promises or

- 11 -

misrepresentations made by the police, . . . (4) was in custody or under arrest when the consent was given, . . . (5) was in a public or secluded place, . . . or (6) either objected to the search or stood by silently while the search occurred.

Id. at 381 (citations omitted).  Here, although defendant was in custody at the precinct station, none of the other Chaidez factors apply.  He was not questioned for a particularly long time, he was not threatened, physically intimidated or punished by the police, he did not rely on promises or misrepresentations and he did not object to the search.

The search of the Pointview residence should not be suppressed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendant Schwartz's Motion to Suppress Evidence be **DENIED**. [Doc. 28]

**IT IS FURTHER RECOMMENDED** that defendant Schwartz's Motion to Suppress Statements be **DENIED**. [Doc. 29]

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this   23rd     day of September, 2008.